UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

VEONDRA DESHON BARTEE,

                    Petitioner,                          Case No. 1:22-cv-847

v.                                                       Honorable Robert J. Jonker

BRYAN MORRISON,

                    Respondent.

_____/

## OPINION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.
Petitioner Veondra Deshon Bartee is incarcerated with the Michigan Department of Corrections at
the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. He comes to
this court having been convicted of the tragic murder of a three-year-old child. On January 15,
2019, on the first day scheduled for trial, Petitioner pleaded guilty in the Genesee County Circuit
Court to second-degree murder, in violation of Mich. Comp. Laws § 750.317, discharging a
firearm from a vehicle causing death, in violation of Mich. Comp. Laws § 750.234a(1)(d), three
counts of assault with intent to commit murder, in violation of Mich. Comp. Laws § 750.83,
possession of a weapon by a felon (felon-in-possession), in violation of Mich. Comp. Laws
§ 750.224f, carrying a concealed weapon (CCW), in violation of Mich. Comp. Laws § 750.227,
and six counts of use of a firearm during the commission of a felony (felony-firearm), in violation
of Mich. Comp. Laws § 750.227b. On March 1, 2019, the court sentenced Petitioner as a third
habitual offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 28 to 70 years for
the assault, discharge from a vehicle, and murder convictions, and 6 years, 8 months to 10 years

on the felon-in-possession and CCW convictions. Those sentences, in turn, were to be served consecutively to the concurrent sentences of 2 years for each felony-firearm conviction. The total minimum sentence of 30 years was a term of the plea agreement.

On September 9, 2022, Petitioner filed his habeas corpus petition raising a single ground for relief:

> I.    The trial court erred in refusing to grant Mr. Bartee's request for a post-conviction criminal responsibility evaluation, when such evaluation was necessary, where defendant is entitled to expert assistance at public expense in a post-conviction evidentiary hearing? Further, Defendant was denied the effective assistance of counsel since his plea was constitutionally invalid.

(Pet., ECF No. 1, PageID.6.) Respondent contends that Petitioner's ground for relief is meritless. (ECF No. 7.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

**Discussion**

## I.    Factual Background

On January 15, 2019, Petitioner appeared before the Genesee County Circuit Court for the first day of the scheduled jury trial. (1/15/2019 Plea Hr'g Tr., ECF No. 8-11, PageID.274). After *voir dire* had commenced, and after previously rejecting the prosecution's offer on the record, Petitioner notified the court that he intended to accept an offer to plead guilty to several counts in exchange for a sentencing agreement, which included, *inter alia*, amending count one which originally included the charge of first-degree murder, carrying with it a mandatory life sentence without the possibility of parole. (*Id.*, PageID.313, 315.) As part of the plea agreement, the prosecution would amend count one to include a charge of second-degree murder, which, rather than life imprisonment. called for a sentence of a term of years with the possibility of parole after serving the minimum sentence. (*Id.*, PageID.315–316.) Petitioner would plead guilty as charged

2

to the remaining offenses. (*Id.*) Petitioner personally indicated that he understood the proposed agreement. (*Id.*) Petitioner also indicated that he understood that he would be sentenced to two years in prison for all of the felony firearm charges, counts two, four, six, eight, ten, and twelve, (*id.*, PageID.316), and that, for the remaining charges, Petitioner would be sentenced to a consecutive sentence of a minimum of 28 years, with a maximum sentence to be set by the court at sentencing (*id.*, PageID.317). Petitioner testified that he had not been threatened, that no other promises had been made to him, and that he had signed the written agreement. (*Id.*, PageID.321.) Petitioner also stated on the record that he understood his rights and that there would be no trial. (*Id.*, PageID.321–323.) Petitioner pleaded guilty to the amended count one—second-degree murder—and all other counts as charged, testifying that he was doing so "[f]reely and voluntarily," knowing everything that he needed to know, that he was not under the influence of drugs, alcohol, or medications, and that he had no difficulties understanding what the court was telling him. (*Id.*, PageID.323–326.)

In connection with his guilty plea, Petitioner admitted that, on the evening of October 13, 2017, while at a party store, he encountered a man by the name of Jason Mullins. (*Id.*, PageID.327–330.) The two exchanged words and both left the party store in vehicles. (*Id.*, PageID.330–331.) Petitioner then proceeded to pull up at a gas station, where he saw Mr. Mullins in his vehicle in the middle of the street. (*Id.*, PageID.331.) Petitioner admitted that he had a gun on his hip inside of the car (*id.*, PageID.336), that he intentionally fired "a couple of warning shots" in the direction of Mullins' vehicle with the intention of firing at Mr. Mullins, and went home (*id.*, PageID.331, 344, 345, 347). Petitioner understood that "by shooting a gun in the direction of a human being, [there] is at least the creation of a very high degree of risk of death or great bodily harm." (*Id.*, PageID.334.)

Petitioner later learned that one of the shots that he had fired had gone through the window of the vehicle into the third-row backseat, striking and killing a three-year-old child. (*Id.*, PageID.332–333, 335.) The victim's twin sister and mother were also in the vehicle but were not struck. (*Id.*, PageID.335–336.)

Petitioner testified under oath that he never would have fired the shots had he known that a child was in the vehicle. (*Id.*, PageID.332.) He admitted that when he learned that one of his shots had struck a child, "that's when I feel like that I did -- that's when I feel like that I made that mistake and I feel totally sorry for it. Like I feel like -- I regret the whole day, the whole night." (*Id.*, PageID.333.) Petitioner also acknowledged his prior felony convictions. (*Id.*, PageID.337.)

The trial court accepted Petitioner's guilty plea, finding that it was made freely, knowingly, and voluntarily, with an adequate factual basis. (*Id.*, PageID.347–348.) On March 1, 2019, the court sentenced Petitioner to concurrent sentences of 336 months to 840 months' imprisonment on counts one, three, five, seven, nine, eleven, and thirteen. (ECF No. 8-12, PageID.375.) The court also sentenced Petitioner to two years' imprisonment for counts two, four, six, eight, ten, and twelve to run concurrently to each other and consecutively to all other counts. (*Id.*, PageID.375–376).

Following Petitioner's conviction and sentencing, Petitioner filed a motion to withdraw his guilty plea, claiming that he was not criminally responsible at the time of the crime due to his mental condition and that his counsel rendered ineffective assistance by failing to raise that issue. (11/18/2019 Hr'g Tr., ECF No. 8-13, PageID.383.) The court ordered a *Ginther* hearing.[1] (*Id.*, PageID.390.)

---

[1] A hearing under *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973) (a "*Ginther* hearing") allows a criminal defendant to proffer facts or evidence in support of a claim of ineffective assistance of counsel. *Ceasor v. Ocwieja*, 655 F. App'x 263, 266, 271 (6th Cir. 2016).

At the *Ginther* hearing, held on August 28, 2020, Petitioner's trial counsel testified that he discussed the issue of criminal responsibility with Petitioner in the course of preparing for trial and that Petitioner chose not to have an evaluation for competency and criminal responsibility. (8/28/20 Hr'g Tr., ECF No. 8-15, PageID.415.) Trial counsel testified that, based upon his background and experience, there was never an issue with Petitioner understanding what had transpired or whether Petitioner could conform his conduct to what society would have required; trial counsel observed that Petitioner understood the difference between right and wrong and "just broke down" when talking about the three-year-old being killed. (*Id.*, PageID.415.)

Petitioner then testified regarding his life-long mental health issues and history of suicide attempts (*id.*, PageID.454), but also testified that he had confessed to the crime to police officers prior to pleading guilty, never mentioning any mental health issue (*id.*, PageID.463–464). Petitioner told the police that Mr. Mullins should have died and admitted that he threw the weapon to get rid of it after leaving the scene of the homicide. (*Id.*, PageID.464, 467.) At the time of his confession to police, Petitioner thought that he would be going to prison for the rest of his life. (*Id.*) Petitioner admitted that he thought that taking the plea was his choice and in his best interest at the time based upon what his attorney had explained to him. (*Id.*, PageID.456, 458–59.) This included that, if Petitioner did not accept the plea, he would be forced to go to trial and "could possibility get life." (*Id.*, PageID. 468–469.)

The circuit court found that trial counsel's performance was neither deficient nor prejudicial to Petitioner, denying Petitioner's motion to withdraw his plea. (*Id.*, PageID.487.) The court acknowledged that Petitioner has a past history of mental health issues, but that there was nothing "preventing [Petitioner] from knowing right versus wrong" at the time of the crime or preventing Petitioner from having the capacity to conform his actions to that standard. (*Id.*,

PageID.473.) The circuit court observed that Petitioner testified in court "that he knew it was wrong," referring to his crime. (*Id.*, PageID.474.) The circuit court also credited the testimony by Petitioner's trial counsel that, as far as he could tell, "there was no manifestation whatsoever" of Petitioner's mental health issues, that Petitioner was able to communicate with trial counsel, and that he was able to discuss all aspects of the case. (*Id.*, PageID.481.) The court explained that Petitioner acknowledged that he knew that what he was doing was wrong and talked about self-defense, each undermining an insanity defense, (*id.*, PageID.482) and that it couldn't "find that there's prejudice [in not submitting Petitioner for a mental health evaluation] if there is no way to establish that . . . he was legally insane." (*Id.*) The circuit court also found that trial counsel was credible in testifying that Petitioner declined the option of a mental health evaluation, while Petitioner's own version of events—that trial counsel told Petitioner not to do it—was not credible. (*Id.*, PageID.483.)

The court also recognized that trial counsel had originally had a strategy of convincing the jury that Petitioner was guilty of no more than manslaughter, "trying to mitigate and work with what he had," including that Petitioner had been bullied by the victim's father, that Petitioner was angry and distraught, and that Petitioner truly did not mean to hurt the three-year-old child. (*Id.*, PageID.485–486).

But even success in convincing the jurors that Petitioner was guilty of no more than manslaughter would not necessarily yield a better result than the plea offer. Certainly the guidelines for manslaughter would include a minimum sentence far lower than the plea offer. (*Id.*, PageID.486). But a manslaughter conviction in lieu of a murder conviction was no certainty and, even if the strategy proved successful, causing the child's death was not the only significant charge. Trial counsel testified credibly that there was no question about the discharge of the firearm from

the vehicle because the other occupant of the car had already testified to the discharge at the preliminary exam. (*Id.*, PageID.413.) That charge carried a guidelines minimum as high as 26 years. (*Id.*, PageID.486–487.) Thus, trial counsel explained, even if Petitioner was convicted of manslaughter rather than first-degree murder, he might win the "battle," but "still . . . lose the war" because he would have borne a significant risk of a life sentence without parole and still, at best, ended up with a sentence approximating what was available with no risk if he took the plea offer. (*Id.*, PageID.428–429). The circuit court found that, by recommending that Petitioner take the plea agreement, trial counsel "cut [Petitioner's] losses considerably" considering the overall sentencing guideline minimum ranges. (*Id.*, PageID.486.)

On September 9, 2020, Petitioner filed a delayed application for appeal (ECF No. 8-16, PageID.491), which was denied by the Michigan Court of Appeals for lack of merit on October 22, 2020. (ECF No. 8-16, PageID.490.) The Michigan Supreme Court denied Petitioner's application for leave to appeal by order entered on July 6, 2021. (ECF No. 8-17, PageID.806.) This petition ensued.

## II.   AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011))). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015)(internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 180. "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example,

if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

Petitioner's single ground for habeas relief is premised upon two arguments. First, Petitioner contends that his guilty plea was invalid because his trial counsel should have obtained a psychiatrist to evaluate Petitioner's criminal responsibility for the purpose of pursuing an insanity defense. And second, Petitioner claims that "[w]ithout the knowledge gained through a criminal responsibility evaluation," Petitioner's plea was uninformed and, therefore, constitutionally invalid. (ECF No. 1, PageID.23.) Petitioner's claims are misguided and utterly disregard the deference to the state court's determination that the AEDPA requires.

### A.   Ineffective Assistance of Counsel

Petitioner's first claim—that counsel was ineffective in not obtaining a psychiatrist to evaluate Petitioner's criminal responsibility for the purpose of pursuing an insanity defense—was waived by Petitioner's guilty plea. It is well-settled that a valid and unconditional guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Put simply, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Id.*

> "The point . . . is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established."

*Haring v. Prosise*, 462 U.S. 306, 321 (1983) (quoting *Menna v. New York*, 423 U.S. 61, 63 (1975)). Waiver by guilty plea necessarily includes claims of ineffective counsel for not investigating or

10

pursuing an insanity defense. *See Watkins v. Campbell*, 182 F. Supp. 3d 727, 735 (W.D. Mich. 2016) (quoting *Haring*, 462 U.S. at 321); *Coker v. Stephenson*, --- F.Supp. ---, No. 1:22-cv-11320, at *4 (E.D. Mich. Mar. 16, 2023). Given that Petitioner admitted the factual basis for the crime during the plea hearing, any shortcoming by counsel in not pursuing any particular defense is "irrelevant to the constitutional validity of the conviction" based on Petitioner's guilty plea. *Haring*, 462 U.S. at 321. Therefore, Petitioner's claim of ineffective assistance of counsel was waived by his plea of guilty.

Yet, even if Petitioner's guilty plea had not waived his claim, Petitioner's claim of ineffective assistance of counsel is meritless.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

11

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential," per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d), analysis of counsel's performance. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . ." (citing *Harrington*, 562 U.S. at 102)).

The Circuit Court resolved Petitioner's ineffective assistance of counsel under the *Strickland* standard. (8/28/20 Hr'g Tr., ECF No. 8-15, PageID.476 ("The standard that we're talking about for ineffective assistance of counsel set forth in *People* versus *Pickens*, 446 Mich 298, a '94 case, adopts the Strickland standard.").) Thus, there is no question that the court of appeals applied the correct standard.

The court of appeals' application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not

"contrary to" clearly established federal law, the following:

[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the court of appeals applied the correct standard Petitioner can only

overcome the deference afforded state court decisions if the determination regarding Petitioner's

ineffective assistance claims is an unreasonable application of *Strickland* or if the state court's

resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). The Court,

therefore, will consider whether the court of appeals reasonably applied the standard for

Petitioner's claim of ineffective assistance of counsel.

Under Michigan law, insanity is an affirmative defense. Mich. Comp. Laws § 768.21a. It

may apply where an individual, "as a result of a mental illness [as defined by Michigan law] . . .

lacks substantial capacity either to appreciate the nature and quality of the wrongfulness of his or

her conduct or to conform his or her conduct to the requirements of the law." *Id.* The law further provides that "[m]ental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity." *Id.* Put another way, "all insane people are mentally ill but not all mentally ill people are insane." *People v. Fultz*, 111 Mich. App. 587, 590 (1981).

Petitioner may have a history of mental illness, but as the circuit court observed, Petitioner never presented any evidence that he was legally insane *at the time that he committed his crimes*. *See e.g. Knowles*, 556 U.S. at 127 ("To prevail on his ineffective-assistance claim, [the defendant] must show, therefore, that there is a 'reasonable probability' that he would have prevailed on his insanity defense had he pursued it."). In determining that trial counsel's performance was neither deficient nor prejudicial to Petitioner, the circuit court credited trial counsel's testimony that Petitioner never displayed anything that would have led trial counsel to conclude that Petitioner failed to understand what had transpired or that Petitioner could not have conformed his conduct to what society would have required. The circuit court concluded that, based upon the testimony presented at the hearing, Petitioner understood the difference between right and wrong. Indeed, at the time that he entered his plea of guilty, Petitioner testified that he never would have fired the shots had he knew that a child was in the vehicle, (1/15/2019 Plea Hr'g Tr., ECF No. 8-11, PageID.332), and that he knew that what he did was wrong, (*id.*, PageID.333; *see also* ECF No. 8-15, PageID.415, 471, 482.).

The state court's findings are entitled to considerable deference under the AEDPA--a federal court may grant habeas relief only where the state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)—and factual findings are presumed correct—"a determination of a factual issue by a State court shall be presumed correct," 28 U.S.C. § 2254(e)(1). Petitioner can rebut the

presumption of correctness with clear and convincing evidence. *Id*. But, here, Petitioner offers no evidence at all to call into question the state court's findings. (*See* Pet'r's Reply, ECF No. 11.) He simply notes the mental health challenges he faced, blithely ignoring that the state court made its factual findings taking into account every single one of the challenges Petitioner identified. (8/28/20 Hr'g Tr., ECF No. 8-15, PageID.480 ("when you have a mental health history of the kind here, even the kind that Mr. Bartee presents with, PTSD, history of abuse, he's witnessed a bad crime himself, he was on medication . . . .").)

Considering the record here, this Court cannot say that the state court's determination was unreasonable. Thus, counsel's failure to require Petitioner to undergo an evaluation for criminal responsibility was not prejudicial to Petitioner which is, alone, the death knell of Petitioner's first claim. *See Abdur'Rahman v. Bell*, 226 F.3d 696, 715 (6th Cir. 2000)

Moreover, although defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Strickland*, 466 U.S. at 691, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste," *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Therefore,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Strickland*, 466 U.S. at 690–91.

Here, the circuit court concluded that credible testimony during the *Ginther* hearing indicated that Petitioner was presented with the opportunity for a criminal responsibility evaluation but declined and based upon trial counsel's considerable experience, trial counsel saw no reason during the course of his interactions with Petitioner to pursue an insanity defense. Indeed, in arguing in support of his motion to withdraw his plea, Petitioner admitted that shooting at the

vehicle was wrong and argued for the first time that he was acting in self-defense, a concept entirely at odds with a possible defense of insanity. (8/28/20 Hr'g Tr., ECF No. 8-15, PageID.465–471.)

The circuit court also concluded that, considering the evidence stacked against Petitioner, trial counsel acted reasonably in attempting to mitigate that evidence and the potential for a sentence of natural life in prison by first pursuing a manslaughter conviction rather than one of first-degree murder, and then later advising Petitioner to accept the plea agreement. (*See* 8/28/20 Hr'g Tr., ECF No. 8-15, PageID.486.) As the circuit court observed: "you have to remember that this is a case involving a shooting of a three year old" with an eyewitness and a confession to police. (8/28/20 Hr'g Tr., ECF No. 8-15, PageID. 485.) It explained that trial counsel "is a fine attorney, but he's not a miracle worker." (*Id.*)

Petitioner has not shown that the state court's rejection of this ineffective assistance claim was contrary to, or an unreasonable application of, *Strickland*. Therefore, Petitioner is not entitled to habeas relief based upon his argument of ineffective assistance of counsel.

### B. Invalid Plea

Although Petitioner's guilty plea waives many habeas claims, it does not bar all of them. Among those claims not barred by Petitioner's guilty plea are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. Petitioner does not challenge the power of the state to bring him into court. Thus, the only remaining means available for challenging his conviction is for Petitioner to claim that his plea was invalid, i.e., that it was not knowingly and voluntarily entered into. This is what Petitioner attempts to do in the second portion of his ground for relief.

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or ... mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267–68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).

Petitioner does not challenge the plea-taking procedure and does not contend that he was incompetent at the time of his plea. He instead insists that, without evaluation to determine

Petitioner's criminal responsibility and legal capacity "at the time of the offense," Petitioner's plea was not informed and is, therefore, invalid. (Pet. ECF No. 1, PageID.23.)

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (finding that a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Here, the State has not only produced a transcript of Petitioner's guilty plea proceedings but has also produced a transcript of the hearing held regarding Petitioner's motion to set aside his guilty plea. During the plea hearing, Petitioner testified that he understood that by pleading guilty, he faced a minimum sentence of 28 years of incarceration with a maximum to be set by the court, avoiding a possible conviction for first-degree murder, which carries with it the possibility of a mandatory life sentence without the possibility of parole. (1/15/2019 Plea Hr'g Tr., ECF No. 8-11, PageID.311–312.) Petitioner personally indicated that he understood the proposed agreement. (*Id.*) He indicated that he had not been threatened, that no other promises had been made to him, that he understood his rights, and that he was entering into the plea agreement "[f]reely and voluntarily," knowing everything that he needed to know. (*Id.*, PageID.321–326.)

18

By denying Petitioner's motion to withdraw his guilty plea, the circuit court credited trial counsel's testimony that Petitioner was given the option of undergoing a criminal evaluation responsibility but declined the same. (8/28/20 Hr'g Tr., ECF No. 8-15, PageID.415.) The trial court also concluded that, by recommending that Petitioner take the plea agreement, trial counsel "cut [Petitioner's] losses considerably" considering the maximum sentencing guideline ranges and the overwhelming evidence against Petitioner. (*Id.*, PageID.486.) Petitioner has wholly failed to rebut the trial court's findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Moreover, in his § 2254 petition and reply, Petitioner merely reiterates his assertion that trial counsel should have consulted with an expert regarding Petitioner's mental health concerns and diagnoses. However, regardless of how Petitioner's claim is framed, to obtain habeas relief Petitioner must show that he was prejudiced by counsel's failure to properly advise him of the consequences of his plea with regard to the question of criminal responsibility. "In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59.

Here, Petitioner does not claim that, had he been evaluated for criminal responsibility, he would have insisted on proceeding to trial; only that he would have liked to have the opportunity to learn the results of the evaluation. Yet even that claim finds no support in the record; the trial court found Petitioner's claim that he was never given that option to be incredible. Indeed the court found that Mr. Bartee was offered the option but declined. (8/28/20 Hr'g Tr., ECF No. 8-15, PageID.484.) That finding is presumed correct and that finding precludes the determination that if Petitioner had only been afforded the opportunity for a forensic examination "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

For all of the reasons discussed, Petitioner has failed to show that the state court's factual determinations are unreasonable on this record or that the court's legal conclusions are contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in

violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.


Dated:      December 7, 2023                    /s/ Robert J. Jonker
                                                 Robert J. Jonker
                                                 United States District Judge

21